W. G. AREY, EARL D. HONEYCUTT, AND ROBERT J. AREY, PARTNERS, TRADING UNDER THE FIRM NAME OF AREY OIL COMPANY OF SHELBY, NORTH CAROLINA, v. RADFORD W. LEMONS AND WIFE, NANCY LEE LEMONS; CRAWFORD HARDWARE & IMPLEMENT COMPANY, INC., AND M. M. MAUNEY.

(Filed 1 November, 1950.)

**1. Appeal and Error § 40c—**

Upon an appeal from an order granting or refusing an interlocutory injunction, the Supreme Court may review both the findings of fact and the conclusions of law.

**2. Injunctions § 6—**

The purpose of an interlocutory injunction is to preserve the *status quo* of the subject matter of the suit until a trial can be had on the merits, and therefore when defendants' are in the actual and peaceable possession and enjoyment of the property in dispute, an interlocutory order will not lie to enjoin them from using same in order to coerce them to transfer the property to plaintiff, the consumption or destruction of the property not being involved.

**3. Injunctions § 2—**

Equity will not undertake by injunction to protect the property rights of a party who has an adequate remedy at law.

**4. Injunctions § 6—**

A plaintiff lessor claiming ownership of tanks, pumps and other equipment used at a filling station, and maintaining that defendant lessee had

forfeited his term for breach of lease provision that the station should sell only petroleum products of plaintiff lessor, *held* not entitled to the issuance of a preliminary injunction, since plaintiff fails to show inadequacy of the legal remedies available to it.

**5. Same—**

In order to be entitled to a preliminary restraining order, plaintiff must make out at least a *prima facie* showing of right to the final relief demanded by him.

**6. Monopolies § 2: Contracts § 7a: Landlord and Tenant § 2—**

A single instrument whereby the owner of lands leases same to an oil company rent free, and the oil company subleases the property back to the owner rent free, upon agreement that only the petroleum products of the oil company should be sold at the filling station, *is held* void, since the only consideration is the promise of the oil company to sell its products to the owner and the promise of the owner to handle such products to the exclusion of similar merchandise of competitors, which agreement is in contravention of G.S. 75-5, and this result is not affected by a recital in the writing that the owner signed same as a part of consideration for a deed to the property executed by a third person.

APPEAL by defendants from *Rudisill, J.,* at Chambers, 15 April, 1950, in action in the Superior Court of CLEVELAND.

Application for an interlocutory injunction.

For convenience of narration, the plaintiffs, W. G. Arey, Earl D. Honeycutt, and Robert J. Arey, are called the Arey Oil Company; the defendants, Radford W. Lemons and wife, Nancy Lee Lemons, are designated as Lemons and wife; and the defendant, Crawford Hardware & Implement Company, Inc., is referred to as the Hardware Company.

The affidavit and verified complaint of the plaintiffs allege these things:

1. The Arey Oil Company is a commercial partnership which has been wholesaling petroleum products in Cleveland County since 19 November, 1945. The partners are W. G. Arey, Earl D. Honeycutt, and Robert J. Arey. The last named was admitted into the firm subsequent to 1945. Lemons and wife own a filling station at Patterson Springs in Cleveland County.

2. On 19 November, 1945, the Arey Oil Company and Lemons and wife executed a single instrument in writing whereby Lemons and wife leased the filling station to the Arey Oil Company for the ensuing ten years, and whereby the Arey Oil Company sublet such filling station to Lemons and wife for the same period upon these terms: "That . . . the said parties of the first part (Lemons and wife) do hereby agree to operate, or have operated, a filling station located on said property, for a period of 10 years from the date hereof; and it is further understood and agreed that all gasoline, lubricants, oils, kerosene, and all other

petroleum products purchased and sold by said filling station . . . on the aforesaid property shall be purchased from the Arey Oil Company . . ., and the said Arey Oil Company shall deliver and sell the aforesaid products at wholesale tank-wagon prices, current at the time of delivery of same. Upon failure of the parties of the first part (Lemons and wife) to operate or have operated a filling station on the aforesaid premises, or upon their failure to buy all their petroleum products from the Arey Oil Company . . ., as provided above, then the said Arey Oil Company shall have the privilege to take over the said filling station and other buildings on the aforesaid premises and have same operated for the purpose of selling their petroleum products on said premises." The instrument, which was immediately registered in the office of the Register of Deeds of Cleveland County, does not obligate any party to pay any rent, but recites that its execution by Lemons and wife is "a part of the consideration for the deed executed to them by Robert J. Arey" for the filling station.

3. The Arey Oil Company has always performed the obligation devolving upon it "under the said lease" by furnishing Lemons and wife "sufficient petroleum products to be used in the operation of their filling station," and Lemons and wife used their filling station for the retail sale of petroleum products obtained by them from the Arey Oil Company "in compliance with the terms of the lease until . . . January 10, 1950." In so doing, Lemons and wife used certain tanks, pumps, and other equipment belonging to the Arey Oil Company.

4. On 10 January, 1950, Lemons and wife entered into an attempted agreement with the Hardware Company and M. M. Mauney, purporting to lease to them the filling station "for the sale of petroleum products furnished by the . . . Hardware . . . Company and M. M. Mauney." Notwithstanding they had knowledge of the writing of 19 November, 1945, and of the ownership by the Arey Oil Company of certain tanks, pumps, and other equipment theretofore used by Lemons and wife, the Hardware Company and Mauney forthwith took possession of the filling station and of such tanks, pumps, and other equipment, and ever since have been using the filling station of Lemons and wife and the equipment of the Arey Oil Company in retailing their own petroleum products.

5. The Arey Oil Company has suffered substantial pecuniary damage as the proximate consequence of the acts of the defendants in depriving it of the use of its tanks, pumps, and other equipment, and in preventing the employment of the service station of Lemons and wife as an outlet for its petroleum products. Besides, the Arey Oil Company is entitled to the possession of the filling station under the writing of 19 November, 1945, because Lemons and wife have failed "to have petroleum products furnished by the Arey Oil Company" sold at such station. The Arey

Oil Company sues to recover monetary damages, and the possession of the tanks, pumps, and other equipment claimed by it, and to eject the defendants from the filling station premises for the remainder of the period designated in the writing of 19 November, 1945.

The answers of the defendants, which are verified, deny all of the material allegations of the complaint, except the allegation that the male defendant, Radford W. Lemons, and the plaintiffs, W. G. Arey and Earl D. Honeycutt, doing business as the Arey Oil Company, executed the writing of 19 November, 1945. The answers expressly aver that Lemons and his wife are the absolute owners of the filling station at Patterson Springs and of all property employed in its operation, including the tanks, pumps, and other equipment claimed by the Arey Oil Company; that the male defendant, Radford W. Lemons, has had sole charge of the operation of the filling station ever since 19 November, 1945, and that he is now purchasing petroleum products from the Hardware Company and Mauney, business competitors of the Arey Oil Company, for retail sale at the filling station; that the male defendant, Radford W. Lemons, does not wrong the Arey Oil Company in patronizing its competitors because the writing of 19 November, 1945, has no binding force; that the Arey Oil Company had no interest in the sale of the filling station to Lemons and wife "and no lease or rental contract, or contract to sell petroleum products entered into or became a part of the consideration for the purchase" of the filling station by them, and by reason thereof the writing of 19 November, 1945, is not based on any valuable consideration as to them; and that such writing is in reality a sales agreement, and is void for that it contravenes the anti-monopoly or anti-trust statute embodied in subsection 2 of G.S. 75-5.

After notice to defendants, the Arey Oil Company applied to Judge Rudisill for an interlocutory injunction pending a trial on the merits. The Judge heard the application upon the pleadings and supporting affidavits, and found these facts: (1) That the Arey Oil Company owned the tanks, pumps, and other equipment in controversy, and consequently was entitled to immediate possession thereof; (2) that the Arey Oil Company is also entitled to the immediate possession of the filling station under the writing of 19 November, 1945; and (3) that the continued use of the tanks, pumps, and other equipment in dispute by the defendants, and their continued possession of the filling station will entail a serious loss to the Arey Oil Company. The Judge thereupon granted an interlocutory injunction enjoining the defendants until the further order of the court from using the tanks, pumps, and other equipment in controversy in any way, and from using the filling station for the sale of petroleum products or for any other business purpose. The defendants excepted and appealed, assigning errors.

*C. C. Horn and Joseph C. Whisnant for plaintiffs, appellees.*
*Falls & Falls for defendants, appellants.*

ERVIN, J.  Upon an appeal from an order granting or refusing an interlocutory injunction, the Supreme Court may review both the findings of fact and the conclusions of law.  *Finger v. Spinning Co.,* 190 N.C. 74, 128 S.E. 467; *Coates v. Wilkes,* 92 N.C. 376.

The purpose of an interlocutory injunction is to preserve the *status quo* of the subject matter of the suit until a trial can be had on the merits.  *Boone v. Boone,* 217 N.C. 722, 9 S.E. 2d 383; *S. v. Scott,* 182 N.C. 865, 109 S.E. 789; *Harrison v. Bray,* 92 N.C. 488.  For this reason, an interlocutory injunction does not lie to take property out of the possession of one party and place it in the possession of another.  *Jackson v. Jernigan,* 216 N.C. 401, 5 S.E. 2d 143; *Stevens v. Myers* (Mo. App.), 73 S.W. 2d 334; *Spoor-Thompson Mach. Co. v. Bennett Film Laboratories,* 105 N. J. Eq. 108, 147 A. 202; *Eastern Farms Products v. Wampsville Dairymen's Corporation,* 17 N.Y.S. 2d 954, 173 Misc. 413.  Besides, equity will not undertake by injunction to protect the property rights of a party who has an adequate remedy at law.  *Oil Co. v. Mecklenburg County,* 212 N.C. 642, 194 S.E. 114.  When these rules are applied to the case at bar, it is manifest that the court below erred in awarding injunctive relief to the Arey Oil Company.

The defendants are in the actual and peaceable possession and enjoyment of the property in dispute under claim of right.  Yet, the order of the court enjoins them from making further use of such property so as to coerce them to transfer its possession to the Arey Oil Company.  Hence, the order disturbs rather than preserves the *status quo* of the subject matter of the suit.

Moreover, the evidence does not indicate any inadequacy in the legal remedies available to the Arey Oil Company.  *Whitford v. Bank,* 207 N.C. 229, 176 S.E. 740; *Kistler v. Weaver,* 135 N.C. 388, 47 S.E. 478; *Wilson v. Respass,* 86 N.C. 112; *Hettrick v. Page,* 82 N.C. 65; *Baxter v. Baxter,* 77 N.C. 118; *Jordan v. Lanier,* 73 N.C. 90; *Howell v. Howell,* 40 N.C. 258.

The provision of the injunction relating to the filling station is improper for another reason.  To obtain an interlocutory injunction, a plaintiff must make out at least a *prima facie* showing of a right to the final relief demanded by him.  *Plott v. Comrs.,* 187 N.C. 125, 121 S.E. 190; *Gray v. Warehouse Co.,* 181 N.C. 166, 106 S.E. 657; *Jones v. Lassiter,* 169 N.C. 750, 86 S.E. 710; *Newton v. Brown,* 134 N.C. 439, 46 S.E. 994.

The Arey Oil Company predicates its demand for a final judgment for the possession of the filling station during the remainder of its supposed

term upon the premise that Lemons and wife have forfeited their right of occupancy under their purported sublease through breach of the condition of the writing of 19 November, 1945, requiring them to handle the petroleum products of the Arey Oil Company to the exclusion of similar merchandise marketed by any other person, firm, or corporation.

The writing of 19 November, 1945, is a somewhat startling document. According to its language, the parties to it entered into a single transaction whereby Lemons and wife, as owners of the fee, leased the filling station rent-free to the Arey Oil Company for a term of ten years, and the Arey Oil Company, as lessee, subleased the same property rent-free to Lemons and wife for the same term. This being the case, it may be argued with much persuasiveness that any rights which the Arey Oil Company hoped to acquire in the filling station by the transaction died a-borning through the merger of the lease and sublease in the fee. See: 51 C.J.S., Landlord and Tenant, section 96. We by-pass this intriguing question without decision, for its determination is not necessary to the solution of our present problem.

It is clear that the various provisions of the writing of 19 November, 1945, are indivisible, and that there is no consideration to support them unless it can be found in the mutual promises embodied in the agreement therein contained whereby the Arey Oil Company promises to sell its petroleum products to Lemons and wife, and whereby Lemons and wife promise to handle such products to the exclusion of similar merchandise marketed by any other person, firm, or corporation. But any consideration inherent in these mutual promises is necessarily illegal; for the agreement has as its object the violation of the anti-monopoly or anti-trust statute making it unlawful for any person, firm, corporation, or association to make a sale, or to contract to make a sale "of any goods, wares, merchandise, articles or things of value whatsoever in North Carolina, whether directly or indirectly, or through any agent or employee, upon the condition that the purchaser thereof shall not deal in the goods, wares, merchandise, articles or things of value of a competitor or rival in the business of the person, firm, corporation or association making such sales." G.S. 75-5, subsection 2; *Shoe Co. v. Department Store,* 212 N.C. 75, 193 S.E. 9. The validity of this conclusion is not impaired in any wise by the recital that the writing in suit was signed by Lemons and wife as a part of the consideration for the deed for the filling station executed to them by Robert J. Arey, who was not then a member of the Arey Oil Company. An agreement prohibited by positive law does not cast off its unlawful character, and put on legal holiness because it is entered into by some of the parties in consequence of a promise made by them to a third person in an independent contract.

For these reasons, the writing of 19 November, 1945, is void in its entirety, and the Arey Oil Company has no right to the final relief demanded by it in respect to the filling station.

It is noted, in closing, that this case is distinguishable from *Oil Co. v. Garner,* 230 N.C. 499, 53 S.E. 2d 441, where it appeared that the oil company had a valid leasehold estate in the filling station by virtue of its obligation to pay rent, and where it did not appear that the occupants of the filling station had agreed to purchase petroleum products from the oil company on the condition denounced by the statute.

The order granting the interlocutory injunction is
Reversed.