CAPITAL CITY OIL COMPANY, INC. v. HUMBLE OIL AND REFIN-ING COMPANY, FORMERLY ESSO STANDARD OIL COMPANY

No. 7410SC969

(Filed 5 March 1975)

**Contracts § 7; Monopolies § 2— sublease agreements — restraint of trade**

Where a third party sold the products of plaintiff oil company on premises subleased from defendant oil company, defendant's cancellation of the sublease of the third party, defendant's entry of a new sublease prohibiting the third party from selling petroleum products on the property, and defendant's cancellation of the second sublease and entry of a third sublease allowing the third party to sell petroleum products on the property, after which the third party began selling the products of defendant oil company, did not constitute an unlawful restraint of trade in violation of plaintiff's rights.

APPEAL by plaintiff from *James, Judge.* Judgment entered 5 August 1974 in Superior Court, WAKE County. Heard in the Court of Appeals 10 February 1975.

This is a civil action brought by plaintiff (Capital City) seeking to recover from defendant (Humble) treble damages for alleged acts in restraint of trade and in violation of plaintiff's rights under G.S., Chapter 75. Transactions and events giving rise to the controversy are as follows:

On 21 June 1968 Humble (then Esso Standard Oil Company), lessee for twenty years of certain property located on Downtown Boulevard in Raleigh, subleased the premises to J. L. Williams, T/A Raleigh Beverage and Grocery. The duration of the lease was one year beginning 1 July 1968 and from year to year thereafter. Either party could terminate the lease upon 30 days' notice after the first or any subsequent term. Under the agreement, Williams would use the property "only for a drive-in type grocery store selling among other items usually sold at such stores, beer and wine."

On 15 May 1969 Williams entered into a contract-dealer arrangement with Capital City for one year beginning 1 July 1969. Under this agreement Capital City would install two self-service gasoline pumps on the property, and Williams would buy all of his petroleum products and accessories from Capital City. The contract further provided that "in the event the lease with Humble should be cancelled this agreement shall also be cancelled."

On 8 July 1969 Humble notified Williams that his sublease would be terminated as of 1 July 1970, and on 1 April 1970 Williams gave Capital City notice of cancellation. Williams and Humble subsequently entered into a new sublease agreement on 29 June 1970, for one year beginning 1 July 1970 and from year to year thereafter. Again either party had the right to terminate with 30 days' notice at the end of any term. Williams also covenanted not to use the premises for storage, sale or handling of petroleum products.

On 24 March 1972 Williams and Humble cancelled the second sublease and on 5 April 1972 entered into another agreement, leasing the building, tanks, and pumps and allowing Williams to sell petroleum products. The remaining terms of the agreement were the same as before. Williams began selling

Exxon gasoline on the leased property, and on 6 December 1972 Capital City brought suit.

Both parties moved for summary judgment. After a hearing on the motions, the trial court entered judgment for defendant. Plaintiff appealed to this Court.

*Vaughan S. Winborne for plaintiff appellant.*

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, by James L. Newsom, for defendant appellee.*

ARNOLD, Judge.

The sole question presented by this appeal is whether Humble's activities with respect to the demised premises constitute an illegal restraint of trade. The facts are not in dispute. In support of their motions for summary judgment, both parties relied on affidavits and on documents of admitted authenticity: the leases between Humble and J. L. Williams; the contract between Williams and Capital City; and their correspondence with Williams. On the basis of these papers, the trial court concluded that defendant Humble was entitled to judgment as a matter of law. We agree.

Plaintiff Capital City's contractual right to do business on the premises derived solely from the rights of Williams, the sublessee. As the owner of a leasehold estate, Humble had the right to impose restrictions on Williams' use of the premises. 3 G. Thompson, Real Property § 1146 (1959); J. Webster, Real Estate Law in North Carolina § 217 (1971). Had it chosen to do so, Humble could have required that the premises be used exclusively for the sale of Humble products. *See* 54 Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 598; *cf. Arey v. Lemons*, 232 N.C. 531, 61 S.E. 2d 596 (1950). Humble's motives notwithstanding, it clearly was within its rights in terminating the original sublease and in executing successive ones.

The judgment of the trial court is affirmed.

Affirmed.

Judges VAUGHN and MARTIN concur.