THE FLORSHEIM SHOE COMPANY v. THE LEADER DEPARTMENT
STORE, INC.

(Filed 22 September, 1937.)

**1. Actions § 4—**

The courts of a state will not lend their aid to the enforcement of a contract which violates its positive legislation.

**2. Monopolies § 2—Agreement that retailer should sell products upon condition that he not sell like products of competitors is unlawful.**

An agreement that a retailer should handle the product of a certain manufacturer upon condition that the retailer should not sell like products of other manufacturers within the same price range *is held* prohibited by C. S., 2563 (2), and unenforceable in our courts, and does not fall within C. S., 2563 (6), permitting, in the absence of an intent to stifle competition, a contract granting the seller an exclusive agency for a product within a certain territory.

**3. Monopolies § 3b: Actions § 4—Party may not recover when it must make out its case by showing illegal contract.**

Plaintiff sued on an open account, and defendant admitted the account and set up a counterclaim, alleging that plaintiff had breached its contract granting defendant exclusive agency for the sale of plaintiff's product, but defendant's evidence established an unlawful agreement under which defendant was to sell plaintiff's product upon condition that defendant was not to sell the products of plaintiff's competitors, C. S., 2563 (2). Defendant contended that such unlawful agreement was unenforceable by the plaintiff only, for that the statute placed a penalty upon the seller and not upon the buyer. *Held:* In order for defendant to establish its counterclaim it had to make out its case by showing the illegal contract, and the courts will not hear it in establishing such case.

**4. Appeal and Error § 41—**

Where the rights of the parties are determined by the decision on one question of law, other questions discussed in the briefs need not be decided.

THIS is a civil action, tried before *Clement, J.,* BUNCOMBE Superior Court, on appeal from the general county court of Buncombe County, heard by consent at Chambers at North Wilkesboro, N. C., 17 August, 1937. Reversed.

The plaintiff instituted the action in the general county court of Buncombe County to recover upon an open account for merchandise and for the value of an electric sign. The defendant admits the plaintiff's account and the value of the electric sign was agreed upon. In its answer the defendant set up a cross action and counterclaim, alleging damages arising from the breach of a contract, under the terms of which the plaintiff granted the defendant an exclusive agency in Asheville to sell plaintiff's nationally known and advertised "Florsheim Shoes."

Verdict and judgment in favor of the defendant and the plaintiff, assigning errors, appealed to the Superior Court.

The court below, overruling the plaintiff's exceptive assignments of error, affirmed the judgment of the general county court, and the plaintiff appealed.

*Hedrick & Hall, J. G. Merrimon, and Chas. G. Lee, Jr., for plaintiff, appellant.*

*Williams & Cocke for defendant, appellee.*

BARNHILL, J. The evidence discloses that from 1921 until the spring of 1935 plaintiff sold its shoes in Asheville exclusively to S. I. Blomberg and his successor, The Leader Department Store, Inc. In the spring of 1935 plaintiff procured another dealer in the town of Asheville and discontinued sales to the defendant. The defendant contends, and the jury found, that the sales to The Leader Department Store, Inc., and its predecessor were made under a contract of exclusive agency. The plaintiff denied the contract, and contended that it discontinued sales to the defendant for the reason that the defendant did not pay its bills promptly, and at times became heavily indebted to the plaintiff.

The contract relied upon by the defendant was testified to by S. I. Blomberg as follows: "We gave you exclusive sole agency for those shoes when Mr. Harper was here, and he gave it to you because I told him to do so, and as long as you will pay your bills and advertise those shoes and not carry a competitive line, that is, a line that don't conflict in price with the Florsheim shoe, which were retailing at that time for $10.00, $12.00, and $14.00, he says you can have the shoes. You don't have to worry about how many shoes you are going to carry, because we are going to carry your account the same as we do hundreds of others, you can take your time and you can pay when convenient; don't pay any attention about paying the bills exactly on time, but you must advertise them and you must not carry any other line of shoes except Florsheim shoes. Mr. Harper told me he would give me exclusive sole agency for the Florsheim shoes, providing as long as I pay my bills, with the provision that I don't handle any other kind of shoes, that is, competitive, that is a competitive price, to the Florsheim shoe, and that I could pay my bills when convenient. I agreed to take on the shoes and advertise them, not handle any other line, and he agreed to furnish me with shoes from time to time just when we needed them and that I would pay my bills. My best recollection is that Mr. Schaaf came down either 1922 or 1923. He certainly did tell me that I had the exclusive agency to sell these shoes. He said one of the conditions was that I had to advertise them. He said one of the conditions to allow me to

sell these shoes under this agreement was I should not carry or sell any other shoes of competitive price range. The agreement was that I was not allowed to sell any shoes at prices reasonably competitive with the Florsheim shoe. I wasn't under any obligation to buy a certain number, but to handle their line and nobody's else. According to our agreement I was supposed to buy their shoes and nobody's else. We stuck to it and didn't buy anybody's else shoes. At no time during the whole period did I carry or buy any other shoes within the price range of Florsheim shoes. That is the only shoe we carried and advertised, because we had an agreement with Mr. Schaaf and the Florsheim people that we did not put in any other line except the $5.00 shoes 'that Friendly Five.' I was supposed to buy from him all of the Florsheim shoes the trade demanded. Whatever our trade demanded, needed, I was supposed to buy Florsheim shoes and no other kind of shoes."

Is the contract, which the evidence of the defendant tends to establish, void for that it violates subsection 2 of C. S., sec. 2563, or does subsection 6 thereof apply? If it is a contract prohibited by subsection 2, it is unlawful and unenforceable. If subsection 6 is the pertinent provision of the statute, an intent to stifle competition must appear in order to defeat a recovery by defendant. Upon the question as to whether the defendant's counterclaim should have been dismissed as of nonsuit, these subsections constitute the battleground between the parties. The rights of the parties in this particular are to be determined by an interpretation and application of the evidence in relation to these two subsections in the light of the decisions of this Court in *Fashion Company v. Grant,* 165 N. C., 453, and in *Mar-Hof Company v. Rosenbacker,* 176 N. C., 330.

C. S., 2563, is the codification of chapter 41, section 5, Public Laws 1933, and provides: "In addition to the matters and things hereinbefore declared to be illegal, the following acts are declared to be unlawful, that is, for any person, firm, corporation, or association, directly or indirectly, to do, or to have any contract, express or knowingly implied, to do any of the acts or things specified in any of the subsections of this section." Subsection 2 thereof, which is the same as subsection (b) in the original law, reads: "To make a sale of any goods, wares, merchandise, articles, or things of value whatsoever in North Carolina, whether directly or indirectly, or through any agent or employee, upon the condition that the purchaser thereof shall not deal in goods, wares, merchandise, articles, or things of value of a competitor, or rival in the business of the person, firm, corporation, or association making such sale."

We are called upon to determine whether the contract, as established by the defendant's evidence, comes within the terms of this subsection.

If the contract violates the provisions of the quoted statute it is unenforceable. It is well settled that the courts of a state will not lend

their aid to the enforcement of a contract when the contract violates the positive legislation of the state of the forum.  *Fashion Company v. Grant, supra.*

Under the contract testified to by the defendant's witness, the plaintiff was to make sale of goods, wares, and merchandise to the defendant upon the condition that the defendant should not handle any similar merchandise of a competitor, that is, that he should not handle or sell any other shoe which sold within the price range of the Florsheim shoe.  The sale of merchandise which this subsection condemns is a sale made on the condition that the purchaser thereof shall not deal in goods, wares, merchandise, articles, or things of value of a competitor or rival in the business of the person, firm, corporation, or association making such sale.  The witness on more than one occasion testified in effect that one of the conditions upon which the defendant was allowed to handle the shoes of the plaintiff under this agreement was that the defendant should not carry or sell any other shoes of a competitive price range.  It was expressly held in *Fashion Company v. Grant, supra,* that a contract of this nature was prohibited by the cited statute and was unenforceable in the courts of North Carolina.

The defendant alleges a contract of exclusive agency and insists that subsection 6 of C. S., 2563, is apposite, and that its contract is enforceable unless an intent to stifle competition appears.  It relies upon *Mar-Hof v. Rosenbacker Company, supra.*  If we were considering the allegations of the counterclaim rather than the evidence of the defendant, we would be prone to concede that the position of the defendant is well taken.  The demurrer interposed by plaintiff was properly overruled. However, the defendant's evidence does not fit the shoe prepared for it in defendant's further answer.  It is a case where the defendant alleged itself into court on its counterclaim, and then proved itself out of court by its evidence.

An examination of *Mar-Hof Company v. Rosenbacker, supra,* discloses that the decision in this case turned upon an interpretation of subsection 6, C. S., 2563, under which an intent to stifle competition must appear.  It does not expressly or impliedly overrule *Grant's case, supra.*  To the contrary, the Court cited and distinguished the *Grant case, supra,* in its opinion in the following language: "We were cited by counsel to the case of *Fashion Company v. Grant,* 165 N. C., 453, as an authority against our present decision, but in that case the contract came under another section of the statute and contained a stipulation that rendered it void by express and unequivocal terms of the portion of the law directly applicable."

The defendant contends, however, that even if the contract established by it comes within the provisions of subsection 2, C. S., 2563, it is un-

enforceable by the plaintiff only. It calls the attention of the Court to the fact that the statute places a penalty only upon the seller and not upon the buyer. This contention is answered in the language of section 348 of Story's Agency, as follows: "The distinction between the cases where a recovery can be had and the cases where a recovery cannot be had of money connected with illegal transactions which seems now best supported is this: That wherever the party seeking to recover is obliged to make out his case by showing the illegal contract or transaction, or where it appears that he was privy to the original illegal contract or transaction, then he is not entitled to recover any advance made by him connected with that contract." *Fashion Company v. Grant, supra; Culp v. Love,* 127 N. C., 461; *Bluthenthal v. Kennedy,* 165 N. C., 372.

If the defendant's contract was strictly as alleged in his cross action, we would be prone to hold that it was enforceable. However, the testimony offered has in it vital provisions not alleged and brings it squarely within the terms of subsection 2, C. S., 2563. *Fashion Company v. Grant, supra,* is controlling. The contract relied upon violates the positive legislation of the State, and in order to recover the defendant is obliged to make out his case by showing the illegal contract or transaction.

The plaintiff further attacks the validity of defendant's alleged contract for want of mutuality and by reason of the indefiniteness of its terms of duration. These interesting questions are debated in the briefs at some length. As our conclusion on the first point is determinative of the action, it is unnecessary for us to discuss or decide them.

The exception of the plaintiff to the refusal of the general county court to grant its motion to dismiss the defendant's cross action as of nonsuit should have been sustained.

Reversed.